IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ORLANDO DESTEFANO | : |
| | : CIVIL ACTION |
| Plaintiff, | : |
| | : |
| v. | : |
| | : NO. 11-6715 |
| THE CITY OF PHILADELPHIA | : |
| | : |
| Defendant. | : |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                         October 3, 2013

Pending before the Court are the Motion for Summary Judgment by Defendant City of Philadelphia (the "City") and the Motion for Summary Judgment by Plaintiff Orlando DeStefano. For the following reasons, Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment are each denied in their entirety.

**I.      FACTUAL AND PROCEDURAL HISTORY**[1]

The City employed Plaintiff, Orlando DeStefano, as an officer in the Philadelphia Police Department on or about April 26, 1965. (Pl.'s Mot. Summ. J., Ex. A, Pl.'s Req. for Admis. No. 101.) As of May 3, 2008, Plaintiff was a police lieutenant. (Id. No. 105.) In Plaintiff's position as a lieutenant, Plaintiff performed both administrative duties and duties in the street as a commander of officers. (Def.'s Mot. Summ. J., Ex. 3, Dep. of Pl. Orlando DeStefano ("DeStefano Dep."), 6:7–20, Aug. 29, 2012.) On or about May 3, 2008, Plaintiff was standing at

---

[1] The statement of facts is compiled from a review of the parties' briefs and the evidence submitted in conjunction with those briefs. To the extent the parties allege a fact that is unsupported by evidence, the Court does not include it in the recitation of facts.

a crime scene when he got his legs wrapped up in crime scene tape, causing him to fall to the ground. (Pl.'s Req. For Admis. No. 105.)  Plaintiff landed on both knees, causing injury to his knees, ankles, cervical spine, thoracic spine, and lumbar spine. (Id. No. 107.)  From the date of Plaintiff's injury until approximately October 15, 2009, Plaintiff was placed on "injured on duty" status, did not report to work, and continued to receive his regular salary. (DeStefano Dep. 29:24–30:4, 32:15; Def.'s Mot. Summ. J., Ex. 11, "Limited Duty Instructions.")  On or about October 15, 2009, following surgery and physical therapy, Plaintiff returned to work as a police lieutenant in a limited duty position. (Pl.'s Req. for Admis. No. 109.)  Plaintiff was unable to resume all of the duties of a "Police Lieutenant" as defined by the Philadelphia Police Department. (Pl.'s Req. for Admis. No. 112.)  Instead, Plaintiff worked in a "limited duty" capacity in the Police Department's Internal Affairs Division. (Def.'s Mot. Summ. J., Ex. 18, Initial Vocational Report at 3.)

On April 20, 2010, Dr. Wilhemina Korevaar, acting in her capacity as the Medical Director for the City's Employee Disability Program, interviewed and evaluated Plaintiff. (Def.'s Mot. Summ. J., Ex. 14, Dr. Korevaar's Report at 1.)  Dr. Korevaar concluded that Plaintiff was "permanently and partially disabled from returning to his preinjury position as a police officer with the City of Philadelphia." (Id. at 3.)  Dr. Korevaar also found that Plaintiff's disability was "not due solely to the injury on 05/03/08" and "that [Plaintiff's] failure to recover is the consequence of his preexisting underlying degenerative knee disease, worse on the right than the left." (Id.)

On May 3, 2010, Charles Ramsey, Commissioner of the Philadelphia Police Department, sent a letter to Plaintiff informing him that the City had deemed him partially and permanently

disabled due to his injury and that he would no longer be able to perform active police duty. (Pl.'s Req. for Admis. No. 119.)  Commissioner Ramsey's letter also informed Plaintiff that he would be separated from the Philadelphia Police Department as of 11:59 p.m. on May 30, 2010. (Id. No. 120.)  Plaintiff's status as "permanently and partially disabled" was the only basis for his separation.  (Id. No. 121.)

On or about July 13, 2010, Plaintiff met with Terrence Walsh, a vocational counselor that the City selected to interview Plaintiff and determine where else within the City government Plaintiff might work under the City's Secondary Employment Program.  (Def.'s Mot. Summ. J., Ex. 18, Walsh Letter).  On or around August 30, 2010, Mr. Walsh found a position for Plaintiff in the City's Water Department.  (Id., Ex. 19, Walsh Notes.)  Plaintiff turned down the position because it paid too little relative to the salary he had earned in the Police Department.  (See id., Ex. 1; DeStefano Dep. 64:14–65:4.)  On November 30, 2010, Plaintiff's participation in the City's Secondary Employment Program ended and Plaintiff separated from employment with the City.  (Id., Ex. 20, Report of Separation).  On January 25, 2011, Plaintiff elected to receive a lump sum payment from the City's Deferred Retirement Option Plan (DROP) in the amount of $69,413.25.  (Id., Ex. 22, Distribution Selection Form.)

On October 27, 2011, Plaintiff initiated the present litigation.  In his Complaint, Plaintiff set forth two causes of action: Count I alleged disability discrimination under § 504 of the Rehabilitation Act, 29 U.S.C. § 794.  (Compl. at 5.)  Count II alleged intentional discrimination under the same provision of the Rehabilitation Act.  (Compl. at 6.)  On March 5, 2012, Defendant filed its Answer.  On June 17, 2013, both Plaintiff and Defendant filed Motions for Summary Judgment.  On July 17, 2013, Plaintiff filed a Response to Defendant's Motion for

Summary Judgment.  On September 4, 2013, Defendant filed its Response to Plaintiff's Motion for Summary Judgment.

## II.     STANDARD OF REVIEW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials

negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims." Id. at 325. Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec., 475 U.S. at 586. "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted." Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

Notably, "[t]he rule is no different where there are cross-motions for summary judgment." Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Third Circuit, "'[c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" Id. (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

## III.    DISCUSSION

The Court turns first to consideration of Defendant City of Philadelphia's Motion for Summary Judgment.[2] Defendant sets forth six grounds for relief. First, the City claims that Plaintiff cannot succeed on his claims for disability discrimination or intentional discrimination

---

[2] Although the Court separately addresses both Motions for Summary Judgment, we will consider the arguments raised in Plaintiff's Motion and accompanying briefs when ruling on Defendant's Motion, and vice versa.

because he cannot perform the essential functions of a police lieutenant with or without accommodation. Second, the City argues that even assuming Plaintiff is a "qualified individual," the City could not accommodate him with a permanent limited duty position. Third, the City claims that accommodating Plaintiff by permanently detailing him to a limited duty or administrative position would be an undue hardship on the City. Fourth, the City asserts that it engaged in a good faith interactive process and that Plaintiff rejected the accommodation. Fifth, the City contends that it accommodated Plaintiff for the two years that he was injured on duty. Sixth, the City argues that Plaintiff cannot show that he was subjected to an adverse employment action as a result of disability discrimination, nor can Plaintiff show that his termination was a pretext for discrimination.

### A. Proving Discrimination under the Rehabilitation Act

As set forth above, Plaintiff alleges disability discrimination and intentional discrimination respectively under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.[3] "Congress passed the Rehabilitation Act in 1973 to make certain that no individual with a disability would 'be subjected to discrimination under any program or activity receiving Federal financial assistance.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 206–07 (3d Cir. 2009) (quoting 29 U.S.C. § 794(a)). Plaintiffs alleging violations of § 504 have a private right of action under federal law. Id. at 206–07 n.2. To make out a prima facie case of discrimination under the

---

[3] As both parties have noted in their Motions, a case involving a police officer bringing a claim against the City of Philadelphia under the Rehabilitation Act has previously been before this Court. See Acevedo v. City of Phila., 680 F. Supp. 716 (E.D. Pa. 2010). This case is not binding precedent on this Court. Moreover, a motion for summary judgment, particularly under the Rehabilitation Act, is a highly fact-intensive inquiry dependent on the specific, undisputed facts of each individual case.

Rehabilitation Act, the employee bears the burden of demonstrating: "'(1) that he or she has a disability, (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job.'" Donahue v. Consol. Rail Co., 224 F.3d 226, 229 (3d Cir. 2000) (quoting Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). "The plaintiff must make a prima facie showing that reasonable accommodation is possible." Id. Once the plaintiff makes these requisite showings, the burden shifts to the defendant to prove "'as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable or would cause an undue hardship on the employer.'" Id. (quoting Shiring, 90 F.3d at 831).

Here, there are a number of disputes of material fact. Those disputes are too numerous to catalogue concisely, but among them are two issues pertaining to the "essential function" element of a discrimination claim under the Rehabilitation Act: (1) whether "patrol" is an "essential function" of a police lieutenant in the Philadelphia Police Department and (2) whether Plaintiff would be capable of "patrol" were he still a police lieutenant in the Philadelphia Police Department. Both of these questions are material to the question of whether Plaintiff "is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer." Donahue, 224 F.3d at 229. With such material facts in dispute, the Court cannot grant either party's motion for summary judgment.

### B. "Essential Functions" of the Job of Police Lieutenant

To make a prima facie showing of disability discrimination under § 504 of the Rehabilitation Act, a plaintiff must show, *inter alia*, "that he or she is otherwise qualified to

perform the essential functions of the job, with or without reasonable accommodations by the employer." Id.  Before a plaintiff can prove that "he or she is otherwise qualified to perform the essential functions of the job," a plaintiff must make a showing of what those "essential functions" are.

The ADA[4] provides that "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1).  A job function may be considered "essential" for any of a number of reasons, including but not limited to the following:

> (I) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

---

[4] By the express terms of the Rehabilitation Act:

> The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 ["ADA"] (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.

29 U.S.C. § 794(d). Accordingly, the standards for assessing a violation of § 794(d) are "coextensive with the standards for determining whether a covered employer has violated the ADA." Fowler, 578 F.3d at 208.

A reviewing court attempting to define what the essential functions of a particular job are must consider "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, the description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8).  In addition, the applicable regulations provide a non-exclusive list of what evidence should be considered in determining whether a particular function is essential:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(3).

The City argues that "[a] police lieutenant's job entails administrative and supervisory positions including supervising officers on patrol." (Def.'s Mot. Summ. J. 10.)  The City points to Plaintiff's choice to remain on injured on duty status for approximately six months after being cleared by a doctor to return to work to support its assertion that in order to have been "fit to return to work," Plaintiff would have had to have been capable of "supervising officers on patrol." Id.

The City's citation to the fact of Plaintiff's choice to take "injured on duty" status is not, by itself, evidence sufficient to support the assertion that "patrol" is an essential function to the job of police lieutenant.  Just as a Rehabilitation Act plaintiff cannot point to his having performed a job without performing a particular function as evidence that a function is not "essential," a Rehabilitation Act defendant cannot point to a plaintiff's failure to perform a job as

9

evidence that a particular function is "essential." See Acevedo, 680 F. Supp. at 734. Accordingly, Defendant's citation to Plaintiff's failure to return to work after having been cleared by Dr. Berman is not, itself, evidence that "patrol" is an essential function of the job of police lieutenant.

The City also proffers the affidavit of Commissioner Ramsey. (Def.'s Mot. Summ. J., Ex. 24.) Commissioner Ramsey, in his official capacity as the one "responsible for managing a Department of 6,500 sworn officers," stated that: lieutenants "have to supervise officers in the field"; "every police officer must be able to perform full duty job functions regardless of whether s/he is assigned to an administrative position or to patrol duty"; and even officers in administrative positions "are deployed to the street first when the Department deems it necessary." (Id. at Nos. 2–4, 6.) The Court may properly consider Commissioner Ramsey's assessment of the essential functions of the job of police lieutenant as "the employer's judgment as to which functions are essential." See 29 C.F.R. § 1630.2(3)(I).

Conversely, Plaintiff points to the job description for "Police Lieutenant" as defined by the City of Philadelphia Personnel Department. (Pl.'s Mot. Summ. J., Ex. B, "Police Lieutenant" Job Description.) Specifically, Plaintiff points to the language under the heading "Physical and Medical Requirements," which reads in its entirety: "Ability to physically perform the duties and to work in the environmental conditions of a position in this class." (Id. at 2.) Additionally, Plaintiff cites the "General Definition" of "Police Lieutenant," which reads as follows:

> This is responsible supervisory police work involving the command of an assigned shift in a police district or a specialized police unit. Work involves responsibility for instructing and leading police officers in their work, for assigning them duties and checking their efficiency. Work may involve responsibility for the supervision of special units, such as assigned shift of the traffic division or a squad

>of policemen on duty.  Considerable judgment must be exercised independently in interpreting orders and in making decisions concerning important police problems when no superior officer is readily available.  Work is performed within the general framework of established routine and departmental rules and regulations, with changes in routine and assistance on major problems received from a superior officer.  All work is subject to general supervision by personal inspections, review of reports by superiors, and appraisal of the effectiveness of police work performed by the assigned squad or detail.

(Id. at 1.)  Plaintiff argues that "there is nothing in the job description, at all, which requires lieutenants to perform routine patrol work, street duty, be available for emergencies or any of the other make believe duties posited by the City."  (Pl.'s Mot. Summ. J. at 17.)  This job description from the City of Philadelphia Personnel Department is both "the employer's judgment as to which functions are essential" and a "written job description," and thus the Court may properly consider it as evidence of a job's "essential functions."  See 29 C.F.R. § 1630.2(3).

      Neither Plaintiff nor the City use the magic words "essential function" to describe the necessity of a police lieutenant's ability to patrol.  However, the City proffers evidence that a police lieutenant's job entails "supervis[ing] officers in the field" and that lieutenants "are deployed to the street first when the Department deems it necessary."  (Def.'s Mot. Summ. J. at 10 & Ex. 24 at 1.)  By contrast, Plaintiff proffers the City of Philadelphia's Personnel Department's job description of "police lieutenant" and asserts that "nothing in the job description, at all, that requires lieutenants to perform routine patrol work."  (Pl.'s Mot. Summ. J., Ex. B.)  The parties' conflicting evidence "creates a factual dispute that underlies [the City's] legal argument as to the essential functions of" a police lieutenant that is material to determining whether the City discriminated against Plaintiff on the basis of his disability.  See Keys v. City of Phila., No. Civ.A.2005 WL 3234847, *1, *5 (E.D. Pa. Nov. 29, 2005).  Therefore, there exists a

11

dispute of material fact and the Court must deny summary judgment as to both parties.

### C. Whether Plaintiff Can Perform the "Essential Functions" of the Job of Police Lieutenant

Even assuming *arguendo* that "patrol" is an essential function to the job of police lieutenant, there remains a dispute as to whether Plaintiff is "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"— namely, whether Plaintiff is capable of performing the function of "patrol." Donahue, 224 F.3d at 229.

The City asserts that Plaintiff is incapable of performing the "essential functions of the job," citing two different medical experts. (Def.'s Mot. Summ. J. at 10–11.) First, it points to a report prepared by Dr. Arthur Bartolozzi on August 31, 2009, who, after examining Plaintiff, declared that Plaintiff "likely will not be able to continue his work related responsibilities because of the exacerbation of his underlying degenerative condition by this injury." (Id., Ex. 8, Bartolozzi Visit Summary at 2.) The City also points to the report from Dr. Korevaar, who examined Plaintiff and concluded that he was "permanently and partially disabled from returning to his preinjury position as a police officer with the City of Philadelphia." (Id., Ex. 14, Dr. Korevaar's Report at 3.) Conversely, Plaintiff points to his own deposition testimony that he was capable of performing "all the administrative functions of a police lieutenant[.]" (Pl.'s Resp. to Def.'s Mot. Summ. J. at 10.) Among other portions of his testimony, Plaintiff highlights the following colloquy:

> DEFENDANT'S COUNSEL: Could you have gone out on the street and gone to a crime scene to supervise your, I say, troops, your sergeants, all the people in your command?
>
> PLAINTIFF: I think so, yeah.

(Def.'s Mot. Summ. J., Ex. 3, DeStefano Dep., 51:7–11, Aug. 29, 2012.)

12

With Plaintiff's testimony that he could "[go] out on the street and [go] to a crime scene to supervise" his officers and the City's medical experts' conclusions that Plaintiff's knees prevented him from performing functions related to walking, there is a dispute of fact as to whether Plaintiff is able to "patrol" as part of his work as a police lieutenant.  The dispute over Plaintiff's ability to "patrol" is material to the question of whether Plaintiff is "otherwise qualified to perform the essential functions of the job with or without reasonable accommodation"— one of the elements of Plaintiff's claims of discrimination under the Rehabilitation Act.  <u>Donahue</u>, 224 F.3d at 229.  Therefore, there exists a dispute of material fact and the Court must deny summary judgment as to both parties.

In light of these two disputes of fact to Plaintiff's claims of disability discrimination under the Rehabilitation Act and other numerous disputes of fact, the Court need not reach the other grounds for summary judgment that the City or Plaintiff raise in their respective motions.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment in its entirety and deny Plaintiff's Motion for Summary Judgment in its entirety.

An appropriate order follows.